**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Case No. SACV 10-550 DOC (MLGx)                                  Date: October 14, 2010

Title: STEVEN & KELLY JAMESSON et. al. v. CITIMORTGAGE, INC. et. al.

PRESENT:

THE HONORABLE DAVID O. CARTER, JUDGE

| Kathy Peterson | Not Present |
|---|---|
| Courtroom Clerk | Court Reporter |

ATTORNEYS PRESENT FOR PLAINTIFFS:   ATTORNEYS PRESENT FOR DEFENDANTS:

NONE PRESENT                                              NONE PRESENT

PROCEEDING (IN CHAMBERS): GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS FOR LACK OF SUBJECT-MATTER JURISDICTION AND FAILURE TO STATE A CLAIM

   Before the Court is a Motion to Dismiss for Lack of Subject-Matter Jurisdiction and For Failure to State a Claim, filed by Defendant Citimortgage, Inc. ("Defendant") in the above-captioned case ("Motion to Dismiss") (Docket 10). The Court finds this matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; Local Rule 7-15. The Court hereby GRANTS in part and DENIES in part Defendant's Motion to Dismiss.

  **I.**  **BACKGROUND**

   Plaintiffs, Steven and Kelly Jamesson ("Plaintiffs") who are legally deaf, own a home in Orange County, California, which they financed with a residential mortgage serviced by Defendant CitiMortgage Inc. ("Defendant"). Complaint, ¶¶ 2-4, 11. In 2009, Plaintiffs fell behind in making their scheduled mortgage payments. *Id.*, ¶ 12. On October 2, 2009, Plaintiffs allege that they accessed Defendant's website via the internet and applied for Defendant's Homeowners Assistance Program by clicking on the Homeowners Assistance icon, signing into their online account, completing the application, and submitting it electronically. *Id.*, ¶ 13. In their application, Plaintiffs allegedly informed Defendant of their deafness and requested to communicate with Defendant's personnel by e-

mail. *Id.*  Plaintiffs subsequently received an online notification from Defendant that its personnel were "actively reviewing" the application.  *Id.*

On November 23, 2009, Plaintiffs received a mailing from Defendant, stating that Defendant had implemented a program designed to assist homeowners who had fallen behind on their mortgage payments.  *Id.*, ¶ 14.  The mailing did not reference the Homeowners Assistance Program to which Plaintiffs had earlier applied.  *Id.*  The mailing invited Plaintiffs to call a toll-free number to speak with a representative who would "explain the details of the program and begin the process of determining their eligibility."  *Id.*  In response, Plaintiffs again accessed CMI's website, signed into their online account, accessed the "Contact Us" feature and sent an email "to tell the company again that they would not communicate via telephone because they were deaf," and to request the opportunity to speak to someone via email.  *Id.*, ¶ 15.  Defendant did not respond to Plaintiffs' email and no further communication about the program occurred.  *Id.*, ¶¶ 15, 24.

On December 17, 2009, Plaintiffs received a letter from Defendant's Collection Department informing them that their mortgage payment was delinquent.  *Id.*, ¶ 16.  The letter stated that if Plaintiffs could not pay the full amount due, they could call a toll-free number to discuss the possibility of making an alternative payment.  *Id.*  Plaintiffs responded in writing, once again explaining that, due to their disability, Plaintiffs could not discuss their mortgage payments by telephone.  *Id.*, ¶ 18.  Plaintiffs once again requested to communicate with Defendant through either email or U.S. mail.  *Id.*  Defendant did not respond to this request.  As Plaintiffs continued to experience difficulty making their mortgage payments, Plaintiffs received four additional letters from Defendant.  *Id.*, ¶ 19-22.  One letter, dated April 1, 2010, stated that, due to the payment default, Defendant planned to conduct an exterior inspection of Plaintiffs' home and to add the cost of this inspection to Plaintiffs' outstanding balance.  *Id.*, ¶ 21.  Another letter, dated April 6, 2010, warned Plaintiffs that non-payment would "result in reporting [Plaintiffs] as delinquent to a national credit bureau.'  *Id.*, ¶ 22.  Each letter instructed Plaintiffs to call a toll-free number if Plaintiffs could not make their payments.  *Id.*

As a result of the above-described events, Plaintiffs filed a four-count Complaint, asserting claims for violations of (1) Title III of the Americans with Disabilities Act ("ADA"), (2) the Unruh Civil Rights Act pursuant to California Civil Code § 51, (3) the Unruh Civil Rights Act pursuant to California Civil Code § 51.5, and (4) the California Business & Professions Code § 17200 et seq.  Plaintiffs also state that they wish to represent a putative class of other legally deaf and hearing-impaired individuals "who have attempted to access" Defendant's mortgage services and were denied access because of their disabilities.  Complaint, ¶ 25-26.  In response, Defendant brings the instant Motion to Dismiss, asserting both that Plaintiffs have failed to state a claim on which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6) and that Plaintiffs lack standing to bring suit, which necessitates dismissal under Fed. R. Civ. P. 12(b)(1).

II.     **LEGAL STANDARD**

**Motion to Dismiss for Lack of Subject Matter Jurisdiction**

Under Federal Rule of Civil Procedure 12(b)(1), a complaint must be dismissed if the Court lacks subject matter jurisdiction to adjudicate the claims. Once subject matter jurisdiction is challenged, the burden of proof is placed on the party asserting that jurisdiction exists. *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986) (holding that "the party seeking to invoke the court's jurisdiction bears the burden of establishing that jurisdiction exists"). Accordingly, the Court will presume lack of subject matter jurisdiction until the plaintiff proves otherwise in response to the motion to dismiss. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, 114 S. Ct. 1673, 1675 (1994).

An element of subject matter jurisdiction is the existence of standing, which is required to satisfy Article III's case or controversy requirement. *See* U.S. Const. Art. III. In order to establish standing, a plaintiff must establish the existence of three required elements. First, the plaintiff must have suffered "an 'injury in fact' – an invasion of a legally protected interest that is (a) concrete and particularized," and (b) "'actual or imminent,' not 'conjectural' or 'hypothetical.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130 (1992) (internal citations omitted). Second, "there must be a causal connection between the injury and the conduct complained of – the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court." *Id.* Finally, a plaintiff must show that it is "'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Id.* Each element of standing is "an indispensable part of the plaintiff's case," and accordingly "must be supported in the same way as any other matter on which the plaintiff bears the burden, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Id.* at 561.

### Motion to Dismiss for Failure to State a Claim

Under Federal Rule of Civil Procedure 12(b)(6), a complaint must be dismissed when a plaintiff's allegations fail to state a claim upon which relief can be granted. Dismissal for failure to state a claim does not require the appearance, beyond a doubt, that the plaintiff can prove "no set of facts" in support of its claim that would entitle it to relief. *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1968 (2007) (abrogating *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99 (1957)). In order for a complaint to survive a 12(b)(6) motion, it must state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009). A claim for relief is facially plausible when the plaintiff pleads enough facts, taken as true, to allow a court to draw a reasonable inference that the defendant is liable for the alleged conduct. *Id.* at 1949. If the facts only allow a court to draw a reasonable inference that the defendant is possibly liable, then the complaint must be dismissed. *Id.* Mere legal conclusions are not to be accepted as true and do not establish a plausible claim for relief. *Id.* at 1950. Determining whether a complaint states a plausible claim for relief will be a context-specific task requiring the court to draw on its judicial experience and common sense. *Id.*

In evaluating a 12(b)(6) motion, review is "limited to the contents of the complaint." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754 (9th Cir. 1994). However, exhibits attached to the

complaint, as well as matters of public record, may be considered in determining whether dismissal is proper without converting the motion to one for summary judgment. *See Parks School of Business, Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995); *Mack v. South Bay Beer Distributors, Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986). Further, a court may consider documents "on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). "The Court may treat such a document as 'part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *Id*.

Dismissal without leave to amend is appropriate only when the Court is satisfied that the deficiencies in the complaint could not possibly be cured by amendment. *Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003) (citing *Chang v. Chen*, 80 F.3d 1293, 1296 (9th Cir. 1996)); *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

### III. DISCUSSION

#### Plaintiffs' Claim for Violation of Title III of the Americans with Disabilities Act ("ADA")

**Motion to Dismiss for Lack of Subject-Matter Jurisdiction**

Defendant moves to dismiss Plaintiffs' claims under Title III of the ADA on the grounds that the Court lacks subject-matter jurisdiction to adjudicate the claims. Specifically, Defendant avers that Plaintiffs lack standing to pursue this action. As explained above, in order to establish standing a plaintiff must show (1) that the plaintiff has suffered an injury in fact, (3) that the injury is traceable to the Defendant's wrongdoing and (3) that favorable court action is likely to redress the injury. *Lujan*, 504 U.S. at 560. Defendant attacks the sufficiency of Plaintiffs' allegations with respect to all three of the *Lujan* factors.

First, Defendant contends that Plaintiffs' allegations do not pass the "injury in fact" test. To establish "injury in fact," a plaintiff must point to the "invasion of a legally protected interest that is (a) concrete and particularized," and (b) "'actual or imminent.'" *Lujan*, 504 U.S. at 560-61. In this case, Defendant avers that Plaintiffs' Complaint references only Defendant's *warning* that an exterior inspection would be conducted, with the costs added to Plaintiffs' outstanding account, and that nonpayment of Plaintiffs' mortgage installments would result in reports of delinquency to national credit bureaus. Defendant emphasizes that Plaintiffs failed to allege either that Defendant actually carried out an exterior inspection or that Defendant, in fact, reported Plaintiffs as delinquent to the credit bureaus.

The Court finds Defendant's argument to this effect unavailing. The "legally protected interest" that Defendant has invaded is not simply Plaintiffs' right to protect their home from

unwarranted exterior inspection or Plaintiffs' right to protect their credit reports from erroneous reports of delinquency. Rather, Plaintiffs have a legally protected interest, under the ADA, to expect places of public accommodation to reasonably accommodate their deafness, lest Plaintiffs be deterred from pursuing the covered accommodation's services to the extent enjoyed by hearing-abled individuals. *See Pickern v. Holiday Quality Foods Inc.*, 293 F.3d 1133, 1138 (9th Cir. 2002) ("We hold that a disabled individual who is currently deterred from patronizing a public accommodation due to a defendant's failure to comply with the ADA has suffered an 'actual injury'"). Plaintiffs allege that Defendant's failure to make reasonable accommodations has prevented Plaintiffs from participating in a mortgage assistance program that is accessible to non-deaf individuals. With these claims, Plaintiffs have plausibly asserted an "injury in fact."

Moreover, the Ninth Circuit has held that a disabled person who is "threatened with harm in the future because of existing or imminently threatened non-compliance with the ADA suffers 'imminent injury'" sufficient to confer standing. *Pickern,* 293 F.3d at 1138. *See also id.* at 1136 ("'Injunctive relief is available [under the ADA] to any person who is being subjected to discrimination on the basis of disability,' *or* who has "reasonable grounds for believing that such person is **about to be** subjected to discrimination.'" (citing 42 U.S.C. § 12188(a)(1)) (emphasis added))). By alleging Defendant's threats to conduct an exterior inspection and/or to report Plaintiffs as delinquent to national credit bureaus, Plaintiffs have adequately pled the existence of an "injury in fact" under the threatened harm theory. The first *Lujan* requirement is therefore satisfied

Defendant next challenges Plaintiffs' claims under the second *Lujan* factor – the need to show that any alleged injury is traceable to Defendant's wrongdoing. Defendant contends that Plaintiffs have failed to satisfy this requirement because Plaintiffs have not "even impl[ied]" that CMI has treated Plaintiffs differently "*because they are deaf*." Def.'s Mot. at 19 (emphasis in original). Rather, Defendant avers that "all CMI customers – deaf and hearing-abled alike – would face the same consequences if they fell behind on their mortgage payments." *Id.*

Defendant's argument is out of place in the ADA context. Unlike many other non-discrimination schemes, the ADA does not require a showing of intentional discrimination. *Lentini v. California Center for the Arts*, 307 F.3d 837, 846-47 (9th Cir. 2004) ("It is undisputed that a plaintiff need not show intentional discrimination in order to make out a violation of the ADA"). Instead, the ADA imposes affirmative obligations on covered entities to make reasonable accommodations for individuals with disabilities. *See* 42 U.S.C. § 12182(b)(2)(A)(I). Therefore, Plaintiffs need not show that Defendant purposely treated Plaintiffs differently on account of their deafness. The "wrongdoing" required to satisfy the second *Lujan* factor arises not from any intentional discrimination on Defendant's part, but by Defendant's failure to make reasonable accommodations to facilitate Plaintiffs' equal enjoyment of Defendant's mortgage services. Indeed, while "all CMI customers – deaf and hearing-abled alike – would face consequences" if they defaulted on their mortgages, non-deaf mortgagees presumably may stave off default by participating in Defendant's mortgage assistance program. By allegedly failing to make reasonable accommodations to allow deaf individuals to participate in this program, Defendant denies deaf individuals "equal enjoyment" of its mortgage

services. In so doing, Defendant committed an alleged act of wrongdoing that is traceable to Plaintiffs' injuries.[1] The second *Lujan* requirement is thus satisfied.

Finally, Defendant argues that Plaintiffs have failed to establish that a favorable court ruling would redress Plaintiffs' injuries. Specifically, Defendant submits that "Plaintiffs mortgage would still be in default even if they were to prevail here." Def.'s Mot. at 19. Once again, Defendant's argument ignores the fact that Plaintiffs' legally cognizable injuries are not limited to the loss of Plaintiffs' house or the economic damages incurred from exterior home inspections or negative credit reports. Plaintiffs have suffered injury due to Defendant's alleged insistence that any mortgage-assistance communications be conducted over the telephone, as Defendant's position allegedly has deterred Plaintiffs from fully enjoying Defendant's mortgage services. *See Pickern*, 293 F.3d at 1138 A favorable court ruling requiring Defendant, for example, to communicate with Plaintiffs over email certainly would redress this alleged injury.

Accordingly, Defendant's Motion to Dismiss Plaintiffs' ADA Claims for Lack of Subject-Matter Jurisdiction is DENIED.

**Motion to Dismiss for Failure to State a Claim**

Defendant next moves to dismiss Plaintiffs' ADA claims on the grounds that Plaintiffs' allegations do not assert a viable claim for relief under Title III of the statute. Title III of the ADA prohibits discrimination on the basis of disability "in the full and equal enjoyment of goods, services, facilities, privileges, advantages or accommodations of any place of public accommodation." 42 U.S.C. § 12182(a). It exists to "assure equality of opportunity, full participation, independent living and

---

[1] Defendant's argument with respect to the second *Lujan* factor strikes the Court as little more than a variation of the [obviously false] claim that a store owner who fails to equip his store with ramps could use the Article III standing requirement to dismiss an ADA claim brought by a wheelchair-bound Plaintiff who was unable to enter to store to buy merchandise, on the grounds that the wheelchair-bound Plaintiff was not denied service **"because he was in a wheelchair."** After all, this store owner could argue, "all customers – wheelchair-bound and able-bodied alike – would be precluded from purchasing objects if they failed to enter the store." The problem with this hypothetical argument, of course, is that it ignores the obvious fact that the store owner's noncompliance with the ADA likely was what prevented the wheelchair-bound patron from entering his shop in the first place. Similarly, in this case, Defendant's argument completely overlooks the impact that its alleged noncompliance with the ADA may have had in allowing Plaintiffs to fall behind in their mortgage payments. Where a hearing-abled mortgagee may have prevented default by participating in the mortgage assistance program, Plaintiffs' allege that they were forced to sit idly by while the unpaid mortgage bills accumulated.

economic self-sufficiency" for individuals with disabilities.  42 U.S.C. § 12101(a)(8).  Unlike many other non-discrimination schemes, Congress did not limit the ADA's reach to instances of intentional discrimination.  *McGary v. City of Portland*, 386 F.3d 1259, 1265 (9th Cir. 2004).  Rather, Title III of the ADA requires places of public accommodation to take affirmative action in order to "make reasonable modifications to [its] policies, practices or procedures, when such modifications are necessary to ... accommodat[e] individuals with disabilities."  42 U.S.C. § 12182(b)(2)(A)(i).

Defendant argues that Plaintiffs' have failed to allege that CMI is a "place of public accommodation" under the statute.  Indeed, Defendant avers that CMI is not a place of public accommodation and that Title III of the ADA does not apply to its actions.  Def.'s Mot. at 7 ("CMI is *not* a place of public accommodation, which sounds the death knell for Plaintiffs' ADA theory.") (emphasis in original).  Defendant rests its argument on the claim that the ADA's coverage extends only to "'actual, physical places where goods or services are open to the public,'" Def.'s Mot. at 8 (citing *Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 1114 (9th Cir. 2000)), and that CMI has not denied Plaintiff access to any physical structure.  Defendant also points out that Plaintiffs have failed to allege that Defendant even operates any brick-and-mortar facilities that are held open to the public.  Plaintiffs respond by challenging both Defendant's apparent assertion that "it is an amorphous company with no physical locations," Pl.'s Opp. at 11, and Defendant's argument that the ADA applies only to transactions conducted in-person at a physical building.

The Ninth Circuit subscribes to the "nexus" theory of ADA liability, which provides that, in order to be actionable, the complained-of discrimination must share "some connection [with] an actual physical place."  *Weyer*, 198 F.3d at 1115 (adopting the Third and Sixth Circuit's conclusion that claims against an insurance company administering an employer-provided disability policy should be dismissed on the grounds that "'no nexus [existed] between the disparity in benefits and the services which MetLife offers to the public from its insurance office.").  The precise degree of required "connection", however, has not been clearly spelled out by the Ninth Circuit.

On the one hand, it appears that purely "virtual" entities with no connection to a physical location do not qualify as "places of public accommodation."  *See National Federation of the Blind v. Target Corp.*, 452 F.Supp.2d. 946, 953 (N.D. Cal. 2006) (the portions of Target's website that do not relate to services offered by Target stores are not places of public accommodation); *Torres v. AT&T Broadband L.L.C.*, 158 F. Supp. 2d 1035, 1037-38 (N.D. Cal 2001) (digital cable transmissions that come into plaintiff's home via a cable service provider have no nexus to a place of public accommodation).   Plaintiffs also may not use the ADA to attack the substantive content of services offered by a Defendant.  The oft-employed analogy states that "while a bookstore must ensure that it communicates with its customers in formats which accommodate the disabled, a bookstore is not required to stock books in Braille."  *Target*, 452 F. Supp. 2d at 955-56 (citing  56 Fed.Reg. 35544, at * 33, (July 26, 1991)).  Indeed, the ADA requires equal *access* to a covered entity's services, not that the services themselves be of equal value to the disabled and non-disabled.  *See Torres*, 158 F.3d at 1038 ("The ADA only requires that the defendants not discriminate against the visually impaired in accessing

their digital cable services. If the visually impaired have already gained access to the defendants' services, there can be no ADA violation.")

On the other hand, courts within the Ninth Circuit have explicitly rejected the notion that the only actions or policies that contravene the ADA are those that "deny physical access to [a] brick-and-mortar store." *National Federation of the Blind v. Target Corp.*, 452 F.Supp.2d. 946, 953 (N.D. Cal. 2006). *See also id.* ("[C]onsistent with the plain language of the statute, no court has held that under the nexus theory a plaintiff has a cognizable claim only if the challenged service prevents physical access to a public accommodation.")

In *Target*, the Northern District of California was asked to decide whether Title III of the ADA required Target, Inc. to make its website reasonably accessible to the blind. The *Target* court resolved this question at least partially in the affirmative, holding that "to the extent that plaintiffs allege that the inaccessibility of Target.com impedes the full and equal enjoyment of goods and services offered in Target stores, the plaintiffs state a [viable] claim." *Id.* at 956. In reaching this decision, the Northern District of California emphasized that the ADA's reach is not limited to "the provision of ramps, elevators and other aids that operate to remove physical barriers." *Id.* at 955. Rather, the statute equally "bar[s] actions or omissions which impair a disabled person's 'full enjoyment' of services or goods of a covered accommodation." *Id.* at 953 (citing 42 U.S.C. § 12182(a)).

The *Target* court's interpretation accords with the ADA's legislative history, which reveals Congress's intent to craft a broad remedial statute designed to root out the discrimination that has "excluded [disabled individuals] from American life." H.R. Rep. 100-711 at 18 (1988). Refusing to limit Title III of the ADA to the provision of ramps and elevators also gives full effect to Congress's intent to enact legislation applicable to a broad range of disabilities – not just those characterized by a lack of physical mobility. *See* U.S.C.A. § 12102(1) (defining disability as a "physical *or mental* impairment that substantially limits one or more major life activities") (emphasis added); U.S.C.A. § 12102(4) ("The definition of disability in this chapter shall be construed in favor of broad coverage..."). This Court thus finds persuasive the Northern District of California's rejection of the "false dichotomy between those services which impede physical access to a public accommodation and those merely offered by the facility." *Target*, 452 F. Supp. 2d. at 955. The Court also notes that by requiring, as a condition of ADA liability, that the services offered via Target's website relate to the goods and services offered at Target's physical locations, the approach adopted by the Northern District of California remains adheres to the Ninth Circuit's requirement that the complained-of discrimination share "some connection [with] an actual, physical place." *Weyer*, 198 F.3d at 1115

As such, Defendant cannot succeed on its Motion to Dismiss merely by arguing that it has not prevented Plaintiffs from gaining physical access to a brick-and-mortar location. Rather, Plaintiffs need only allege that Defendant's failure to reasonably accommodate Plaintiffs' deafness in the administration of Defendant's mortgage assistance program "impedes the full and equal enjoyment of goods and services" offered by Defendant at a physical location. *Target*, 452 F.Supp.2d. at 956.

Defendant's mortgage assistance programs relate to the service of providing mortgages. In their Opposition, Plaintiffs state that applicants for mortgages administered by CMI have the option of applying for their home loans in person at a physical, Citibank location. Pl.'s Opp. at 11. This verity suffices to establish a "nexus" between the conduct at issue in this case and an actual, physical place. *See Weyer*, 198 F.3d at 1115 (the alleged discrimination must share "some connection [with] an actual, physical place."). Defendant's refusal to make participation in their mortgage assistance programs accessible to deaf mortgagees surely "impedes [deaf clients'] full and equal enjoyment" of Defendant's mortgage services. *Target*, 452 F.Supp.2d. at 956.

The Court notes, however, that Plaintiffs' allegation regarding the administration of mortgage applications at a physical place does not appear in the Complaint. Rather, this assertions is made for the first time in Plaintiffs' Opposition to the Motion to Dismiss. For the purposes of deciding this Motion, then, the Court declines to consider this allegation. *See Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir.1984) ("[I]t is axiomatic that the complaint may not be amended by briefs in opposition to a motion to dismiss.").

The Court must then look to see whether other allegations in Plaintiffs' Complaint sufficiently plead the "nexus" requirement. Plaintiffs direct the Court to the Complaint's allegation that Defendant created and mailed its letters to Plaintiffs from a physical location as well as the Complaint's assertion that the letters included a phone number to call. Plaintiffs argue that "[i]t is reasonable to infer that a phone number that connects with someone who can [discuss payment alternatives] is connected to a physical location." Pl.'s Opp. at 10. That may be true. The "nexus" theory, however, demands more. Under the nexus test, a plaintiff must assert some connection between the policy or practice at issue and the existence of a physical location that is regularly held open to the public. To hold that the "nexus" requirement is satisfied anytime a defendant employs people who report to work and carry out their job responsibilities at as physical location would be to substantially weaken the "nexus" test. For, nearly every business would qualify under this watered-down standard, including those businesses whose services have already been determined to fall outside the reach of the ADA. *See Weyer*, 198 F.3d at 1115 (adopting the Third and Sixth Circuit's conclusion that claims against an insurance company administering an employer-provided disability policy should be dismissed on the grounds that "'no nexus [existed] between the disparity in benefits and the services which MetLife offers to the public from its insurance office."); *Target,* 452 F.Supp.2d. at 953 (the portions of Target's website that do not relate to services offered by Target stores are not places of public accommodation) ; *Torres*, 158 F. Supp. 2d at 1037-38 (N.D. Cal 2001) (digital cable transmissions that come into plaintiff's home via a cable service provider have no nexus to a place of public accommodation).

Plaintiffs also point to the Complaint's allegation that Defendant offers its mortgage products through Citibank. Complaint, ¶ 4. In their Opposition, Plaintiffs argue that Citibank is a "bank" and that banks are specifically included in the ADA's list of "places of public accommodation." *See* 42 U.S.C. § 12181(7)(F). With this allegation, Plaintiffs have come close to stating a viable claim

for relief under the ADA.[2]  Nevertheless, the Court notes Defendant's concerns regarding the vagueness with which the "nexus" requirement is pled.  In the interest of caution, the Court declines to hold that Plaintiffs have pled the "nexus" requirement with sufficient specificity.  Plaintiffs should allege this requirement with greater precision in any amended complaint.[3]

Accordingly, Defendant's Motion to Dismiss Plaintiffs' claims under Title III of the ADA is GRANTED.  Plaintiffs' claims under Title III of the ADA are DISMISSED WITH LEAVE TO AMEND.

### Plaintiffs' Claims for Violation of the Unruh Civil Rights Act

Defendant also brings a 12(b)(6) motion to dismiss Plaintiffs' claim under Cal. Civ. Code §51, also known as the Unruh Civil Rights Act ("Unruh Act").  Plaintiffs assert claims under both Cal Civ. Code §51(f) and Cal. Civ. Code §51.5.

### Plaintiffs' Claims Under Cal. Civ. Code § 51(f)

Defendant argues that Plaintiffs' claims under §51(f) are dependant on their claims under the ADA.  Accordingly, Defendant submits that Plaintiffs' Unruh claims cannot stand where Plaintiffs' ADA claims fall.  Indeed, §51(f) provides only that "a violation of any right of any individual under the Americans with Disabilities Act of 1990 shall also constitute a violation of this section."  Defendant thus correctly contends that, to the extent that Plaintiffs' claims under the ADA are dismissed, Plaintiffs' claims under §51(f) are the Unruh Act must be similarly dismissed.

Defendant's Motion to Dismiss is thus GRANTED with respect to these claims.  Plaintiffs' claims under § 51(f) of the Unruh Act are DISMISSED WITH LEAVE TO AMEND.

### Plaintiffs' Claims Under Cal. Civ. Code  § 51.5

Defendant next argues that Plaintiffs' claims under §51.5 of the Unruh Act are undercut by Plaintiffs' own factual allegations.  Section 51.5 provides in pertinent part that "no business

---

[2]Though Plaintiffs did not plead Citibank's status as a bank, the Court arguably could take judicial notice of this fact.  A court may take judicial notice of facts "not subject to reasonable dispute" because they are either "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201.

[3]In its Motion to Dismiss, Defendant also argues that Plaintiffs' ADA claim should be dismissed because Defendant, in fact, reasonably accommodated Plaintiffs' disability.  These factual contentions are premature at the motion to dismiss stage.

establishment of any kind whatsoever shall discriminate against, boycott or blacklist or refuse to buy from, contract with, sell to, or trade with any person in this state on account of [a listed disability]." Defendant's entire argument to dismiss this claim boils down to the contention that Plaintiffs cannot, on the one hand, claim that Defendant failed to conduct business with Plaintiffs, but on the other hand state that Plaintiffs have a mortgage with Defendant. Plaintiffs correctly retort, however, that "it is axiomatic that one transaction of business does not provide indemnification to that business in perpetuity from a claim of discrimination." Pl.'s Opp. at 23.

Accordingly, Defendant's Motion to Dismiss Plaintiffs' claims under the Unruh Act is DENIED.

### Plaintiffs' Claims Under Cal. Bus. & Prof. Code § 17200 et seq

Plaintiffs' last cause of action asserts a claim for "Unfair Business Practices" under Cal. Bus. & Prof. Code §17200 et seq. This code provision prohibits acts or practices that are "unfair, unlawful or fraudulent." Cal. Bus. & Prof. Code §17200. Plaintiffs base their cause of action under this code provision on the claim that Defendant's practices unlawfully contravene both the ADA and the Unruh Act. As the Court has denied Defendant's Motion to Dismiss with respect to Plaintiffs' claims under the Unruh Act, Plaintiffs' cause of action under the Cal. Bus. and Prof. Code survives as well.

Accordingly, Defendant's Motion to Dismiss Plaintiffs' Claims Under Cal. Bus. & Prof. Code § 17200 is DENIED.

### IV.     DISPOSITION

For the reasons stated above, Defendant's Motion to Dismiss Plaintiffs' Claims Under Title III of the ADA For Lack of Subject-Matter Jurisdiction Pursuant to Fed. R. Civ. P. 12(b)(1) is DENIED.

Defendant's Motion to Dismiss Plaintiffs' Claims Under Title III of the ADA For Failure to State a Claim Pursuant to Fed. R. Civ. P. 12(b)(6) is GRANTED. Plaintiffs' claims under Title III of the ADA are DISMISSED WITH LEAVE TO AMEND.

Defendant's Motion to Dismiss Plaintiffs' Claims Under § 51(f) of the Unruh Act is GRANTED. Plaintiffs' claims under § 51(f) of the Unruh Act are DISMISSED WITH LEAVE TO AMEND.

Defendant's Motion to Dismiss Plaintiffs' Claims Under § 51.5 of the Unruh Act is DENIED.

Defendant's Motion to Dismiss Plaintiffs' Claims Under Cal. Bus. & Prof. Code § 17200 et seq is DENIED.

Plaintiffs shall file any amended complaint by November 1, 2010.  Defendant shall have until November 15, 2010 to answer, move to dismiss, or otherwise respond to any amended complaint.

The Clerk shall serve this minute order on all parties to the action.